UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>           Plaintiff,<br><br>    v.<br><br>SEARGENT J. BURNS, *et al.*,<br><br>           Defendants. | Case No. 1:24-cv-01176-CDB (PC)<br><br>FIRST SCREENING ORDER<br><br>(Doc. 1) |

       Plaintiff Devonte B. Harris ("Plaintiff") is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff initiated this action with the filing of a complaint on October 3, 2024, against Defendants Corcoran State Prison ("CSP") Seargent J. Burns, CSP Lieutenant C. Gonzales, CSP Lieutenant E. Munoz, and CSP correctional officers A. Rodriguez and Gregory (collectively, "Defendants"). (Doc. 1). Plaintiff asserts that his First Amendment rights were chilled, and his Eighth Amendment rights were violated, when Defendants used excessive force and retaliated against him as a "known litigator" following his transfer to CSP. *Id.* at 3-4.

**I.    SCREENING REQUIREMENT**

       The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are

frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b). The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

**II.    PLEADING REQUIREMENTS**

   **A.    Federal Rule of Civil Procedure 8(a)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 556). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. *Id*. However, a court "is not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted). The

mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a government actor may be liable under section 1983, if he performs an affirmative act, participates in another's affirmative acts, or fails to perform an act which he is legally required to do that causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). In addition to direct participation, a government actor may be liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588 F.2d at 743).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability may be based on inaction in the training and supervision of subordinates. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of

supervisory personnel in civil rights violations are not sufficient. *See Ivey*, 673 F.2d at 268.

## III.   DISCUSSION

### A.   Plaintiff's Allegations[1]

Plaintiff is a state prisoner currently housed at Kern Valley State Prison and by this action seeks damages for violations of his civil rights while he was incarcerated at CSP. *Id.* at 3-4, 7. He names as Defendants CSP Seargent J. Burns, CSP Lieutenant C. Gonzales, CSP Lieutenant E. Munoz, and CSP correctional officers A. Rodriguez and Gregory. *Id.* at 2.

Plaintiff's claims for First Amendment retaliation and for Eighth Amendment excessive force arise from the same allegations. *Id.* at 5. He alleges that in January 2019, California Department of Corrections and Rehabilitation ("CDCR") staff transferred him from California State Prison—Sacramento to CSP. *Id.* at 3. When he arrived, Defendant Seargent Burns assaulted him, and Plaintiff filed a separate and unrelated excessive force complaint for that incident which "is not the subject of this complaint." *Id.* at 4. He alleges that CDCR staff previously housed him at CSP where he was a "known litigator involved in an infamous event in which several staff were fired for using excessive force against [him] and a female [correctional officer] who corroborated [his excessive force] complaint subsequently committed suicide[] likely due to coworker harassment and ostracism." *Id.*

On July 9, 2019, Defendant Officer Gregory informed Plaintiff that staff were temporarily transferring him back to California State Prison—Sacramento for a court appearance. Plaintiff replied that he waived his appearance and therefore was not due in court. After Defendant Lieutenant Gonzales subsequently arrived, Plaintiff had a similar discussion and gave Gonzales the phone numbers of his attorney, Kelly Babineau, and of Sacramento District Attorney Jeff Hardy to confirm that he was not due in court. Defendant Lieutenant Munoz also arrived, and together with Gonzales lied that what Plaintiff said was not true and that the DA said Plaintiff's attorney must file for a continuance. Plaintiff alleges that "[i]ronically, the matter had already been continued for the [district attorney] to add additional charges."

---

[1] The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

4

Thereafter, based on Munoz's order to extract him, Defendants Burns and Rodriguez directed the control booth officer to open Plaintiff's cell door and the two rushed in and began to punch, kick, and pin Plaintiff to the bunk where he was handcuffed behind the back. Plaintiff alleges Burns and Rodriguez "intentionally bumped" him into several doorways as they entered the rotunda of the building before Plaintiff was placed in a chair to straddle with Burns pushing his neck "down on the bar of the chair" choking him in front of officers Gregory, Rodriguez, Gonzales, and Munoz. Burns and Rodriguez then placed Plaintiff in a wheelchair and rolled him to "Receiving and Release" for transfer.

Plaintiff alleges he reported suicidal thoughts and CDCR staff transferred him to the Mental Health Crisis Bed at the California Health Care Facility in Stockton, California, "where it was confirmed [that Plaintiff did not] actually have court [in Sacramento]." Plaintiff alleges injuries of pain and suffering in the neck, lower left back, and lower left leg through this excessive force claim, and that his First Amendment rights were chilled "but not silenced" through his retaliation claim. *Id.* at 3, 5. He alleges that he had administrative remedies available at his institution but does not indicate whether he exhausted his claims. *Id.* Plaintiff seeks compensatory, nominal, and punitive damages. *Id.* at 5-6. The complaint is signed and dated September 19, 2024. *Id.* at 6.

**B.     Analysis**

1.     *First Amendment Retaliation*

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive;

5

1    mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Here, liberally construing his allegations, Plaintiff indicates that in retaliation for his reputation at CSP as a "known litigator involved in an infamous event in which several [CDCR] staff were fired for using excessive force against [him,]" officers Gregory, Gonzales, and Munoz lied that he was being temporarily transferred back to California State Prison—Sacramento for a court appearance despite Plaintiff explaining that he waived his appearance and was not due in court, and providing the phone number of his attorney and of Sacramento Deputy District Attorney Jeff Harry to allow Defendants to confirm that Plaintiff's appearance was not due. Plaintiff alleges that Munoz and Gonzales further lied that the district attorney said Plaintiff's attorney must file for a continuance despite Plaintiff noting that the matter had already been continued for the district attorney to add additional charges. Plaintiff alleges that officers Burns and Rodriguez, acting on Munoz's orders to extract Plaintiff, had his cell door opened and "rushed in" to attack Plaintiff, pinning him to the bunk and handcuffing him behind the back before "intentionally" bumping him into several doorways as he was transferred to the rotunda of the building. Plaintiff further alleges that he was placed in a "chair to straddle" with Burns pushing his neck down on the bar of the chair choking him in front of officers Gregory, Rodriguez, Gonzales, and Munoz, and thereafter, Burns and Rodriguez placed him in a wheelchair and rolled him to Receiving and Release to be transferred. By Defendants' conduct, Plaintiff alleges that his First Amendment rights were "chilled but not silenced." Plaintiff notes that when he was previously transferred to CSP in January 2019, Seargeant Burns assaulted him, leading Plaintiff to file an excessive force complaint that "is not the subject" of the instant action.

At screening, Plaintiff's allegations are sufficient to cognizably assert a First Amendment

retaliation claim. Plaintiff's allegations indicate Defendants took adverse action in retaliating against him—for his past litigation at CSP which resulted in the firing of several CDCR staff based on their excessive force against him—by forcibly placing him in Receiving and Release to be transferred back to California State Prison—Sacramento under false pretenses and attacking him in the process. *Brodheim*, 584 F.3d at 1270 ("[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.") (citing *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)) (emphasis in original). Plaintiff's allegation that Seargent Burns attacked him when he was previously transferred to CSP only six months before in January 2019 bolsters his assertions that Defendants have retaliated and/or acted with animus towards Plaintiff based on his previous litigation history. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal."). He has plausibly alleged suffering harm from Defendants' actions in attacking him, resulting in physical injury, pain and suffering, and the chilling of his First Amendment rights. *Brodheim*, 584 F.3d at 1270 ("[A]n allegation that a person of ordinary firmness would have been chilled is sufficient to state a retaliation claim … since harm that is more than minimal will almost always have a chilling effect[; a]lleging harm *and* alleging the chilling effect would seem under the circumstances to be no more than a nicety.") (citation omitted). Because Plaintiff alleges that Defendants' fabrication that he was ordered to appear in court in Sacramento was confirmed to be untrue, he has shown that Defendants' actions in forcibly restraining, attacking, and placing him for transfer "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 566.

        2.    *Eighth Amendment Excessive Force*

"[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 328 (1986) (internal quotation marks and citation omitted). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800 (N.D. Iowa 1992) (citation omitted, quoting *Battle v. Anderson*, 564 F.2d 388, 395 (10th Cir. 1977)),

*aff'd*, 973 F.2d 686 (10th Cir. 1992). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted).

A correctional officer engages in excessive force in violation of the Cruel and Unusual Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other words, "whenever prison officials stand accused of using excessive physical force …, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). In making this determination, courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. The extent of injury suffered by the plaintiff may indicate the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, the absence of serious injury is not determinative. *Hudson*, 503 U.S. at 7.

Here, Plaintiff alleges that Defendants forcibly attacked, restrained and removed him from his cell before he was choked and placed for transfer under false pretenses that he was required to appear in Sacramento for court. Plaintiff alleges he suffered pain and physical injuries to his neck, lower left back, and lower left leg. On these allegations, it is conceivable that Defendants' actions to forcibly attack and transfer Plaintiff despite his explanations that he was not due in court could constitute excessive force. These allegations plausibly permit the inference that the force used was applied maliciously and sadistically to cause harm and not in a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 7. Therefore, it is conceivable that Plaintiff's excessive force allegations against correctional officer Defendants could be sufficient to survive screening.

## IV.     CONCLUSION AND ORDER

For the reasons set forth above, it is HEREBY ORDERED:

1.     This action proceeds on Plaintiff's complaint, filed on October 3, 2024 (Doc. 1)

against Defendants CSP Seargent J. Burns, CSP Lieutenant C. Gonzales, CSP Lieutenant E. Munoz, and CSP correctional officers A. Rodriguez and Gregory for claims under the First Amendment for retaliation and the Eighth Amendment for excessive force; and

2. A separate order will issue regarding service of the complaint.

IT IS SO ORDERED.

Dated: **September 3, 2025**

UNITED STATES MAGISTRATE JUDGE